IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| OSIRIS C. TERRY,<br><br>        Plaintiff,<br><br>     vs.<br><br>DON QUIJOTE,<br><br>        Defendant. | Case No. 19-cv-00401-DKW-RT<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS; AND (2) DISMISSING THE COMPLAINT WITH LIMITED LEAVE TO AMEND** |

This product liability lawsuit was filed by *pro se* Plaintiff Osiris Terry after he allegedly consumed moldy beef jerky moments after purchasing it from a Don Quijote discount store.  Don Quijote has moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1), Dkt. No. 23, arguing that this Court has neither diversity nor federal question jurisdiction over this case.  Terry argues only that this Court has federal question jurisdiction based upon violations of various federal statutes, none of which are referenced in the complaint.

Because the complaint does not present a federal question on its face, Don Quijote's motion is GRANTED.  However, because Terry *could* plausibly state a claim arising under federal law, the Court will allow Terry limited leave to amend, as described below.

## FACTUAL & PROCEDURAL BACKGROUND

On the evening of February 4, 2019, Plaintiff Osiris Terry alleges he purchased two packages of teriyaki-flavored beef jerky from Don Quijote discount store, *see* Dkt. No. 1; Dkt. No. 1-1 at 2–3, a company incorporated in Hawaii. *See* Dkt. No. 23-5 at 1–2. Upon eating some of the beef jerky from one of the packages, Terry noticed that it did not taste like teriyaki. When Terry looked inside the package, he saw that the jerky was completely covered with mold, and he began to vomit. Dkt. No. 1 at 1.

Terry immediately drove back to Don Quijote and spoke with the store manager, demanding compensation. Don Quijote completed an investigation, concluding that Bel Air Distributor was responsible for the expired jerky. Terry contacted the distribution company by telephone and spoke with an individual identified only as "Michael." Michael allegedly informed Terry that Don Quijote was "totally responsible" for stocking the expired products on its shelves. *Id.* at 1.

 On July 25, 2019, Terry, proceeding *pro se*, filed this product liability lawsuit against Don Quijote, seeking $100,000 in damages under theories of "negligence, strict liability, and [breach of] warranty." *Id.* At that time, the mailing address Terry provided was in Honolulu, Hawaii. *See id.* On approximately September 23, 2019, Terry filed a notice of change of address, stating that his mailing address had changed to Fort Worth, Texas. Dkt. No. 12. On February 27, 2020, Don Quijote

filed a motion to dismiss under Fed.R.Civ.P. 12(b)(1), arguing that this Court lacks subject matter jurisdiction over this case.

## STANDARD OF REVIEW

To invoke a federal court's subject matter jurisdiction, a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction." Fed.R.Civ.P. 8(a)(1). On a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), "[t]he party asserting jurisdiction bears the burden of establishing subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). How the Court resolves the motion depends on whether the defendant's jurisdictional attack is "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A "facial" challenge is asserted when the defendant accepts the plaintiff's allegations as true and argues that the allegations "are insufficient on their face to invoke federal jurisdiction." *Id.* By contrast, a "factual" challenge is made when the defendant "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Here, as to the question of diversity jurisdiction, Don Quijote mounts a factual challenge because Don Quijote relies on exhibits attached to the

motion to dismiss in order to establish that Don Quijote is a citizen of Hawaii. Dkt. No. 23-5 at 1–2. With respect to federal question jurisdiction, Don Quijote asserts a facial challenge because Don Quijote merely contends that the allegations in the four corners of the complaint, accepted as true, do not present a federal question. *See* Dkt. No. 23-2 at 8–10.

"When the defendant raises a factual attack, . . . [t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met" and "the district court may resolve those factual disputes itself." *Leite*, 749 F.3d at 1121–22 (internal citations omitted); *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (noting that "the party opposing the motion must furnish affidavits or other evidence . . . to satisfy its burden"); *Safe Air for Everyone*, 373 F.3d at 1039 (explaining that "the district court may review evidence beyond the complaint" in resolving a "factual" challenge "without converting the motion to dismiss into a motion for summary judgment").[1] By contrast, a district court reviews "a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the

---

[1] The caveat is that some facts are not subject to judicial determination. "[A] court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Leite*, 749 F.3d at 1122 n.3; *Robinson*, 586 F.3d at 685. As explained below, Terry does not contest the absence of diversity jurisdiction.

court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121.

## DISCUSSION

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Don Quijote challenges the Court's jurisdiction under both statutes, arguing that: (1) the complaint cannot support federal question jurisdiction under Section 1331 because Terry alleges only state law claims; and (2) diversity-of-citizenship jurisdiction under Section 1332 does not exist because, at the time Terry filed the complaint, "both [Terry] and [Don Quijote] were citizens of Hawai'i." Dkt. No. 23-2 at 3. Only federal question jurisdiction is contested, as Terry does not dispute that the parties were citizens of the same state when the complaint was filed, and Terry has not alleged the citizenship of the parties. *See* Dkt. No. 25; Fed.R.Civ.P.8(a)(1); *Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004) (reaffirming that the citizenship of each party is assessed "against the state of facts that existed at the time of filing"); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("[A] party . . . should be able to allege affirmatively the actual citizenship of the relevant parties.").[2] As set forth below, based on a review of the

---

[2]After the close of briefing, Terry filed a second opposition brief, Dkt. No. 36, identical to the

complaint, the Court lacks federal question jurisdiction.  However, because Terry *may* be able to cure this defect by specifically alleging the claims he proposes under the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.*, and/or the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.*, he is granted leave to attempt to do so.

## I.    Federal Question Jurisdiction

Federal question jurisdiction exists when a claim can be said to "aris[e] under" federal law.  28 U.S.C. § 1331.  "A case 'aris[es] under' federal law . . . if 'a well-pleaded complaint establishes either that [1] federal law creates the cause of action or [2] the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28 (1983)).  Here, Don Quijote contends the complaint does not satisfy either option.  Dkt. No. 23-2 at 3, 8–10.  The Court agrees, but it cannot be said that these defects cannot be cured in an amended pleading.

### A.    Federal Law Must "Create" Terry's Cause of Action

Federal law does not "create" any of the causes of action that appear on the face of the complaint.  Rather, the claims asserted in the complaint are state law

---

opposition he previously filed, Dkt. No. 25.  Thus, Terry's duplicative filing is irrelevant.

product liability claims sounding in negligence, strict liability, and breach of warranty that, standing alone, must be brought in state court. Dkt. No. 1 at 1. Notwithstanding, Terry avers for the first time in his opposition brief that Don Quijote violated the following federal statutes: (1) the Federal Trade Commission Act (FTC Act), 15 U.S.C. §§ 41–58; (2) the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.*; (3) the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.*; (4) the Consumer Product Safety Act (CPSA), 15 U.S.C. § 2051 *et seq.*; and (5) the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.* *See* Dkt. No. 25 at 3–4.[3] Although Terry must amend his complaint to rely on any of these claims, the Court will address each statute in turn. For the reasons that follow, only the CPSA and MMWA "create" a cause of action that Terry may leverage to support federal question jurisdiction.

First, the FTC Act and the FDCA do not "create" a private right of action for private litigants. *See, e.g.*, *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981) (holding that the FTC Act "rests initial remedial power solely in the Federal Trade Commission."); *accord Caron v. Fletcher Jones Motor Cars, Inc.*, 715 F. App'x 803, 804 (9th Cir. 2018); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather

---

[3] Terry also asserts violations of the "Consumer Right Acts," but this does not appear to be a federal law, and Terry has not provided a specific citation to the U.S. Code. Dkt. No. 25 at 4.

than private litigants who are authorized to file suit . . ."); *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) ("Section 337(a) of the FDCA bars private enforcement of the statute, stating that 'all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States.'" (quoting 21 U.S.C. § 337(a)); *Perez v. Nidek Co.*, 711 F.3d 1109, 1118–19 (9th Cir. 2013) (holding that plaintiff's state law "fraud by omission claim" for failure to disclose that the device was not FDA-approved "is impliedly preempted because it amounts to an attempt to privately enforce the FDCA"). As such, Terry has no claim under the FTC Act or the FDCA.

Second, while the Packers and Stockyards Act provides a private right of action, 7 U.S.C. § 209(a)–(b)(2),[4] Terry does not have a "colorable" claim under the Act sufficient to invoke federal question jurisdiction; rather, Terry's claim is clearly "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly

---

[4] 7 U.S.C. Section 209(a)–(b)(2) establishes:

> (a) If any person subject to this Act violates any of the provisions of this Act, or of any order of the Secretary under this Act, **relating to the purchase, sale, or handling of livestock**, the purchase or sale of poultry, or relating to any poultry growing arrangement or swine production contract, he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.

> (b) Such liability may be enforced either (1) by complaint to the Secretary as provided in section 309 [7 U.S.C. § 210], or (2) by suit in any district court of the United States of competent jurisdiction . . .

7 U.S.C. § 209(a)–(b)(2) (emphasis added).

insubstantial and frivolous." *Arbaugh*, 546 U.S. at 513 n.10 (quoting *Bell v. Hood*, 327 U.S. 678, 682–683 (1946)); *Shapiro v. McManus*, 136 S. Ct. 450, 455–56 (2015) (collecting cases). The Act prohibits unfair business practices by "any packer or swine contractor" or "live poultry dealer" in the business of purchasing or packaging meats. *See* 7 U.S.C. § 192, 213(a); *Stafford v. Wallace*, 258 U.S. 495, 514 (1922) ("The object to be secured by the act is the free and unburdened flow of live stock"); *Central Coast Meats, Inc. v. U.S. Dep't of Agric.*, 541 F.2d 1325, 1326 (9th Cir. 1976); *Spencer Livestock Com. Co. v. U.S. Dep't of Agric.*, 841 F.2d 1451, 1454 (9th Cir. 1988).[5] Therefore, Terry's wholly frivolous claim under the Act cannot invoke this Court's federal question jurisdiction.

By contrast, it may arguably be possible for Terry to allege a "colorable" claim under the CPSA. *Arbaugh*, 546 U.S. at 513 n.10. The CPSA "explicitly provides private remedies for violations of 'a consumer product safety rule, or any other rule

---

[5]7 U.S.C. Section 192(a) provides that "[i]t shall be unlawful for any packer or swine contractor with respect to livestock, meats, meat food products, or livestock products in unmanufactured form, or for any live poultry dealer with respect to live poultry to" engage in any of the seven categories of conduct listed, all of which amount to a prohibition against "any unfair, unjustly discriminatory, or deceptive practice or device." *See* 7 U.S.C. § 192(a)–(g).

7 U.S.C. Section 213(a) states:

> It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with the receiving, marketing, buying or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing or handling of livestock.

or order issued by the Commission.'" *In re All Terrain Vehicle Litigation*, 979 F.2d

755, 757 (9th Cir. 1992) (quoting 15 U.S.C. § 2072(a)).[6]  But it "does not provide an

express private right of action for violation of the provisions of the [CPSA] itself, as

distinguished from rules or orders issued by the Commission."  *In re All Terrain*

*Vehicle Litigation*, 979 F.2d at 756–57; *see also Alexander v. Sandoval*, 532 U.S.

275, 286–87 (2001) (explaining that in the absence of congressional intent to create

"not just a private right but also a private remedy . . . a cause of action does not exist

and courts may not create one, no matter how desirable that might be as a policy

matter, or how compatible with the statute").  Terry has not referenced the CPSA in

his complaint, much less argued in his opposition brief that Don Quijote violated

any particular safety rule or order promulgated by the Consumer Product Safety

Commission (CPSC).  To state a CPSA claim, Terry must first allege that Don

Quijote violated a specific consumer product safety rule or order issued by the CPSC

and must identify that rule or order.  *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1117

(C.D. Cal. 2008).

_____

[6] 15 U.S.C. Section 2072(a) provides, in relevant part:

> Any person who shall sustain injury by reason of any knowing (including willful)
> violation of a consumer product safety rule, or any other rule or order issued by the
> Commission may sue any person who knowingly (including willfully) violated any
> such rule or order in any district court of the United States in the district in which
> the defendant resides or is found or has an agent . . .

Finally, Terry may invoke federal question jurisdiction by alleging a claim under the MMWA.  The MMWA creates a private cause of action for breach of written or implied warranties: "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . in an appropriate district court of the United States . . . .," 15 U.S.C. § 2310(d)(1)(B), provided that "the amount in controversy" is not less than "the sum or value of $50,000 (exclusive of interests and costs) . . ."  *Id.* § 2310(d)(3)(B); *id.* § 2301(6) (defining "written warranty"); *id.* § 2301(7) (incorporating state law to define "implied warranty"). "Claims under the Magnuson-Moss Warranty Act 'stand or fall with . . . express and implied warranty claims under state law.'"  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).[7]

---

[7]*See also Birdsong v. Apple, Inc.*, 590 F.3d 955, 958–59 & n.2 (9th Cir. 2009) (dismissing plaintiffs' MMWA claim because they failed to state a claim for breach of express warranty, implied warranty of merchantability, or implied warranty of fitness for a particular purpose under California law); *Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912, 913, 919 (9th Cir. 2005) (concluding that dealer and manufacturer were liable to purchaser under MMWA where luxury car's rear window and brake problems were covered under the car's warranties); *Walters v. Vitamin Shoppe Indus.*, 701 F. App'x 667, 669 (9th Cir. 2017) (plaintiff's breach of implied warranty claim under the MMWA failed because there is no implied warranty protections under Oregon law for consumables); *In re Sony PS3 "other OS" Litig. v. Sony Computer Entm't Am., Inc.*, 551 F. App'x 916, 919–20 (9th Cir. 2014) ("Because Plaintiffs fail to adequately allege a state warranty claim, the MMWA claim fails.").

Here, Terry could assert a plausible MMWA claim because the facts alleged at the very least give rise to a claim for breach of the implied warranty of merchantability under Hawaii law. *See, e.g.*, *Ontai v. Straub Clinic & Hospital, Inc.*, 659 P.2d 734, 743–44 (Haw. 1983) ("The implied warranty of merchantability . . . is implied by operation of law into every sale of goods by a merchant seller" and states that, *inter alia*, "the goods 'are fit for the ordinary purpose for which such goods are used.'" (footnote and citations omitted)). Because Don Quijote has only challenged subject matter jurisdiction in this case, the Court leaves the merits of any MMWA claim for another day. *See Shapiro*, 136 S. Ct. at 455 (reiterating that there is a "distin[ction] between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits.").

In short, although the MMWA and the CPSA create a private right of action sufficient to invoke Section 1331 jurisdiction, Terry has not alleged these claims in the complaint. As such, this Court lacks federal question jurisdiction.

### B.   Resolution of a Substantial Federal Question

To the extent Terry contends that federal question jurisdiction exists because his state law claims are premised on violations of unspecified standards of care imposed by the various federal statutes he cites (*e.g.*, FTC Act, FDCA, Packers and Stockyards Act), *see* Dkt. No. 25 at 4, this theory is unavailing.

Federal question jurisdiction will obtain in only a "special and small category" of cases based on state rather than federal law. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire HealthChoice*, 547 U.S. at 699). In this "slim category," the Supreme Court has held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The Court will assume that the first two requirements are met because the last two clearly are not.

### 1.    Substantiality

For a federal issue embedded in a state law claim to be substantial, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue." *Gunn*, 568 U.S. at 260. Instead, the substantiality inquiry "looks . . . to the importance of the issue to the federal system as a whole." *Id.* As a general rule, the mere "presence of a claimed violation of [a federal] statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *See, e.g.*, *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 805–06, 814 (1988) (no federal jurisdiction over negligence per se claim based on alleged violations of the labeling requirements in the Federal Food, Drug, and

Cosmetic Act); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674 (9th Cir. 2012). Here, there is nothing substantial about the federal issues allegedly embedded in Terry's state law claims.

First, there is not a federal agency in this dispute, and the case does not involve a question of whether a government agency has complied with a statute or regulation. *See EmpireHealth Choice*, 547 U.S. at 700.  Second, the alleged violations of the federal standards of care do not involve a "pure issue of law," *see id.*, and nothing suggests that a state court's resolution of any federal questions embedded in this product liability action "would be controlling in numerous other cases" brought under the federal statutes Terry cites.  *Gunn*, 568 U.S. at 262 (quoting *Empire HealthChoice*, 547 U.S. at 700).  Rather, whether Don Quijote violated any particular federal standard is precisely the type of "fact-bound and situation-specific" issue that the Supreme Court has said is "not sufficient to establish federal arising under jurisdiction."  *Gunn*, at 568 U.S. at 263.  Third, a determination as to whether Don Quijote violated a particular standard is not "the only legal or factual issue contested," *Grable*, 545 U.S. at 315, and it is well-established that a claim "supported by alternative theories in the complaint" cannot arise under federal law "unless [federal] law is essential to each of those theories." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988).[8]

---

[8]Although *Christianson* involved patent law and jurisdiction under 28 U.S.C. § 1338(a), the same

Accordingly, Terry has not articulated a "substantial" federal issue in his state law causes of action.

### 2.    Federal-State Judicial Responsibilities

Even if violations of certain standards under the FTC Act, FDCA, and the Packers and Stockyards Act presented a substantial federal question, entertaining this action would disturb the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

"[T]he absence of a federal private right of action [i]s evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *See Grable*, 545 U.S. at 318. Here, as explained, the FTC Act and FDCA do not provide a private right of action, and the Packers and Stockyards Act is wholly immaterial to the allegations in this case. As such, the absence of a private right of action suggests that Congress did not intend to open the door of the federal courts to product liability claims with embedded federal issues. *See Grable*, 545 U.S. at 318–19; *Merrell Dow*, 478 U.S. at 814–17.

Moreover, unlike "the rare state [quiet] title action that raises a contested matter of federal law" and "will portend only a microscopic effect on the federal-

---

standards apply when 28 U.S.C. § 1331 is invoked. *Christianson*, 486 U.S. at 809–10; *Gunn*, 568 U.S. at 257 ("Adhering to the demands of '[l]inguistic consistency,' we have interpreted the phrase 'arising under' in both sections identically, applying our § 1331 and § 1338(a) precedents interchangeably." (quoting *Christianson*, 486 U.S. at 808–09)).

state division of labor," *Grable*, 545 U.S. at 319, the claim asserted here is a garden variety tort claim premised on the breach of some unspecified federal standard of care. Exercising federal jurisdiction over such claims would surely "attract a horde of original filings and removal cases." *See Grable*, 545 U.S. at 318–19 (discussing *Merrell Dow*); *see also Nevada*, 672 F.3d at 676 (holding that exercising federal question jurisdiction over "any state law claim that references a federal consumer protection statute" would shift the balance because state courts "frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes").

Accordingly, because the federal issues raised are not important to the federal system as a whole and entertaining this case would otherwise disrupt the division of labor between state and federal courts, this case does not fit into the "slim category" of state claims with embedded federal issues that can invoke federal question jurisdiction under 28 U.S.C. § 1331. *Gunn*, 568 U.S. at 258.

## II. Leave to Amend

Insofar as Terry asserts that federal question jurisdiction exists based upon claims in his opposition brief that do not appear in the complaint, the Court will permit Terry to attempt to establish federal question jurisdiction by amending his complaint to assert claims under the CPSA and/or the MMWA, as set forth above. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon

terms, in the trial or appellate courts."). Although the appropriate procedure is to request leave to amend the complaint in accordance with Fed.R.Civ.P. 15(a), *pro se* filings must be liberally construed, *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013), and a court must "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). "[T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Id.* at 1131 (citation and internal quotation marks omitted).

As explained above, *see* Section I.A., it may arguably be possible for Terry to allege claims under the CPSA and the MMWA so as to invoke federal question jurisdiction. Therefore, the Court will allow Terry leave to amend to attempt to do so. Leave to amend in all other respects is denied because any such amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). If Terry elects not to amend, he may still pursue his state law-based negligence, strict liability and breach of warranty claims in state court within the time limits afforded by law.

The Court will mail Terry a copy of a form complaint for use in a civil *pro se* proceeding, such as this one. Should Terry choose to use the form, he should answer

**all of the questions** clearly and concisely.  More specifically, Terry should set out each claim under a separate label or heading.  Under each claim, Terry must write short, plain statements telling the Court: (1) the specific basis of this Court's jurisdiction; (2) the legal right(s) he believes were violated; (3) the name of the defendant(s) who violated those right(s); (4) exactly what each defendant did or failed to do; (5) how the action or inaction of a defendant is connected to the violation of Terry's right(s); (6) what specific injury he suffered because of a defendant's conduct; and (7) what relief he seeks.  Should Terry choose to file an amended complaint, he may not incorporate any part of the original complaint, Dkt. No. 1, in the amended complaint.  Rather, all allegations must be re-typed or re-written in their entirety.  To the extent a claim is not re-alleged in an amended complaint, the claim may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*).

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss for Lack of Jurisdiction, Dkt. No. 23, is GRANTED, and the Complaint is DISMISSED with leave to amend.

Terry may have until **May 22, 2020** to file an amended complaint, to the extent allowed herein and consistent with a litigant's ethical obligations under Fed.R.Civ.P. 11(b).   **The Court cautions Terry that failure to file an amended complaint by May 22, 2020, may result in the dismissal of this action.**

IT IS SO ORDERED.

DATED: April 23, 2020 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

*Osiris C. Terry v. Don Quijote*; Civil No. 19-00401 DKW-RT; **ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS; AND (2) DISMISSING THE COMPLAINT WITH LIMITED LEAVE TO AMEND**